UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON LEWIS,

          Petitioner,

                                          Case Number: 05-10216

v.                                              Honorable David M. Lawson

RAYMOND BOOKER,

          Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

      The petitioner, Clifton Lewis, a state prisoner formerly confined at the Ryan Correctional Facility but currently housed at Cooper Street Correctional Facility in Jackson, Michigan has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 asserting that he is in custody in violation of his constitutional rights. The petitioner was convicted of armed robbery, Mich. Comp. Law § 750.529, on May 6, 2002, following a bench trial in Oakland County, Michigan circuit court. He was sentenced on June 5, 2002 as an habitual offender, fourth offense, Mich. Comp. Law § 769.10, to eleven to thirty years imprisonment. The petitioner contends that sufficient evidence does not support his conviction, particularly the "armed" element of armed robbery. The respondent has filed an answer to the petition asserting that habeas relief should be denied because the state court's rejection of the petitioner's insufficiency of evidence claim was not contrary to or an unreasonable application of established federal law. The petitioner filed a reply brief further buttressing the arguments set forth in his habeas petition. The Court finds that the petitioner is not entitled to habeas relief; and therefore the petition will be denied.

I.

The conviction in this case arises from the robbery of Nathan Acord, which occurred on November 10, 2001. The evidence at trial suggests that the petitioner an others were involved in a fracas with Mr. Acord in the city or Pontiac, Michigan. Property was taken from Acord, and he was assaulted by several individuals. The weapon charged by the state – making the robbery an "armed" one – was a lawn mower.

The petitioner was tried jointly with his co-defendant brother, Charles Lewis, who also was found guilty of armed robbery and sentenced to eight to twenty years imprisonment. At trial, Acord testified that after dropping off his grandmother's car at her home, he was on his way back to his house on foot with his dog. As he was walking, two men approached him, an exchange of words took place regarding Mr. Acord's dog, and the two men began to assault Mr. Acord. Acord tried to run away but was chased down and thrown against a truck by the petitioner and his brother, where they continued to assault him. During the beating, two or three other people ran at Mr. Acord and joined in on the assault. Acord said he felt the petitioner or his brother Charles Lewis going through his pockets where his money and watch were located.

The petitioner claims that after Mr. Acord's watch and money were allegedly taken, from his person, Acord got away from his attackers by running approximately ten feet up onto a neighbor's porch, where he sustained further physical blows by being kicked and punched. It was there that Acord was hit with a lawnmower several times, and this forms the basis of the petitioner's argument that the theft was complete before a weapon was introduced into the transaction. The petitioner argues therefore – as he did at trial – that the state has failed to prove that the robbery was accomplished with a weapon or a device crafted to resemble one.

But Mr. Acord testified that although he felt someone going through his pockets before he ran to a neighbor's porch, he could not be sure that his pockets also were not rummaged through during his attack on the porch when he was assaulted with the lawnmower, nor whether his money was taken before the attack on the porch or afterwards. He was certain, however, that his *watch* was taken from his person before he was attacked on the porch with the lawnmower. Mr. Acord also testified that "after being tossed around, scuffled, fighting and all that[, his wallet] ended up ripping open, so that change was falling out pretty much everywhere." Tr. 5/6/02, at 29-30. He said that his "change was scattered all over the porch and defendants hit the victim with the lawnmower while he was on the porch." *People v. Lewis,* 2003 WL 22976518, n. 1 (Mich. Ct. App. Dec. 18, 2003).

Mr. Acord sustained "bruises everywhere around [his] body." Tr. 5/6/02, at 33. He also sustained an injured vertebral disc, a cut behind the back of his ear, a broken nose in five different places, and broken cheek bones.

The trial judge found the defendant guilty of armed robbery with a lawn mower. Following his conviction and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals, raising three issues: (1) insufficient evidence to sustain an armed robbery conviction; (2) the trial court departed from the sentencing guidelines; and (3) ineffective assistance of counsel for failing to move for a hearing under state law for ineffective assistance of counsel or for a new trial. The Michigan Court of Appeals affirmed the petitioner's convictions on December 18, 2003. *People v. Lewis,* 2003 WL 22976518 (Mich. Ct. App. Dec. 18, 2003). The petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same issues presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal in a standard order. *People v. Lewis,* 471 Mich. 890, 687 N.W.2d 220 (Oct. 7, 2004) (Table).

Thereafter, the petitioner filed his federal petition for writ of habeas corpus asserting only the claim that there was insufficient evidence to sustain an armed robbery conviction. The respondent has filed an answer to the petition asserting that habeas relief should be denied because the state court's rejection of the petitioner's insufficiency of evidence claim was not contrary to or an unreasonable application of established federal law. The petitioner filed a reply brief further buttressing the arguments set forth in his habeas petition

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The petitioner contends that there was insufficient evidence to convict him of armed robbery because his actions on November 10, 2001 did not include one of the elements of that crime under Michigan law. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

Armed robbery is defined by Michigan law as the "felonious taking of property from the victim's presence or person." Mich Comp. Laws §750.529. The elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. *People v. Ford*, 262 Mich. App.

443, 458, 687 N.W.2d 119, 128 (2004). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 758, 597 N.W.2d 130, 135 (1999)). Under Michigan law, an "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich. at 758, 597 N.W.2d at 135. "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App. 341, 352, 492 N.W.2d 810, 816 (1992).

The petitioner relies upon his theory that Mr. Acord's watch and money were taken from his person before his was assaulted with the lawnmower, and therefore there was insufficient evidence to prove that the petitioner or his brother was armed with a dangerous weapon at the time of the theft. At most, he says, the evidence supports only an *un*armed robbery conviction. The petitioner insists that the trial evidence shows that the felonious taking of Mr. Acord's watch and money was done *before* he was attacked with a weapon (i.e., the lawnmower). Since it is the petitioner's position that an armed robbery can only have taken place if the attack with the weapon occurred before or contemporaneously with the felonious taking, his actions did not satisfy the third element of armed robbery and a conviction of the offense cannot be sustained.

State law lends some support to this argument. Under Michigan law in effect at the time of the events in this case, not all thefts plus assaults equal robberies unless those events occur in a prescribed sequence. The state supreme court has held in *People v. Randolph*, 466 Mich. 532, 546, 648 N.W.2d 164, 172 (2002), that a robbery is not proven unless the use of force, violence, or fear occurs either before the larcenous taking or simultaneous to it. And in *People v. Scruggs*, 256 Mich. App. 303, 310, 662 N.W.2d 849, 853 (2003), the court held that the use of a weapon in an *armed* robbery must occur before or contemporaneous with the taking.

When reviewing the petitioner's argument, the Michigan Court of Appeals was mindful of this precedent but applied it with reference to the record evidence and concluded:

> Defendants claim that the trial court reversibly erred by relying on the transactional approach to convict them because their use of the weapon (a lawnmower) occurred after the larcenous taking, not before or during the taking as required by MCL 750.529. In *Randolph* and *Scruggs,* a clear and distinct break in time occurred between the larcenous taking and the use of force; in both cases, the defendants did not use force until after they left the store from which they committed the larcenous taking. *Randolph, supra* at 534-535; *Scruggs, supra* 310. Here, there was no a break in the action and defendants' assault on the victim was not only brutal but continuous. The victim managed to slip from defendants' grasp for a moment, but he only made it a few feet before defendants continued their vicious attack. During this continuous assault, defendants committed a larcenous taking and used a weapon, the lawnmower. This is sufficient evidence to satisfy the elements of armed robbery. MCL §750.29; *Randolph , supra* at 532; *Scruggs, supra* at 309-10.
>
> Because the evidence shows that defendants committed a larcenous taking contemporaneously with the use of a weapon, sufficient evidence existed to convict defendants of armed robbery. MCL §750.29; *Randolph , supra* at 532; *Scruggs, supra* at 309-10.

*People v. Lewis,* 2003 WL 22976518, *1 (Mich. Ct. App. Dec. 18, 2003).

The state court's gloss on the evidence was a reasonable one. Viewing the evidence as a whole in the light most favorable to the prosecution, the Court must conclude that the State presented sufficient evidence from which the trial judge sitting as fact finder could have concluded

beyond a reasonable doubt that the petitioner committed armed robbery. State law required proof that an assault against the victim occurred before or contemporaneously with the taking of the property. The victim's testimony furnished adequate proof from which to conclude that at least some property was taken after the lawn mower was used as a weapon to assault him. Michigan amended its robbery statute in 2004 to make clear that "[a]s used in this section, 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Mich. Comp. Laws §750.530. But even under the interpretation of the law in effect at the time, the State proved the crime of armed robbery beyond a reasonable doubt.

As the state court of appeals pointed out, there was no clear and distinct break in time between the larcenous taking and the use of the lawnmower; there was evidence to support the finding that the assault on the victim was continuous. Mr. Acord testified that after the initial assault, the petitioner and Charles Lewis "took a break for a second after they took everything." Tr. 5/6/02, at 30. He said next that he ran about ten feet onto his neighbor's porch, where the petitioner and his brother immediately chased him and continued assaulting him. During the assault on the neighbor's porch, either the petitioner or his brother hit the victim with the lawnmower several times. And Acord testified that his bag of change was scattered all over the porch where he was assaulted with the lawnmower. Mr. Acord testified that he was not sure when his money was taken, but he said that his wallet could have been taken after the fighting. A rational trier of fact could have concluded from that testimony that Acord's money was taken on the porch, where Acord was

assaulted with the lawnmower. The testimony provides circumstantial evidence that Mr. Acord's money was taken from him contemporaneously with the assault with the lawnmower on the porch.

"[C]ircumstantial evidence alone is sufficient to sustain a conviction," and the prosecutor is not required "remove every reasonable hypothesis except that of guilt." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984)). This Court may not reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003) (quoting *Marshall v. Lonberger,* 459 U.S. 422 (1983)). "The mere existence of sufficient evidence to convict therefore defeats [the] petitioner's claim." *Id.* at 788-89. The evidence presented supports the conclusion that the petitioner committed a robbery while armed with a dangerous weapon. The petitioner is therefore not entitled to habeas relief on this claim because the state court's conclusion that the evidence was sufficient to sustain the petitioner's murder conviction did not result in an unreasonable application of *Jackson.*

### III.

For the foregoing reasons, the Court finds that the petitioner has not shown that he is in custody in violation of the Constitution of the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk#1] is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2008.

                                          s/Felicia M. Moses
                                          FELICIA M. MOSES